**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

Patrick Healy,
individually and on behalf of all others
similarly situated,

*Plaintiffs*,

v.                                                         Civil Case No. _____

Allianz Worldwide Partners,
Allianz Global Assistance,
Allianz Global Assistance Insurance Agency,
Allianz Global Risks US Insurance Company

*Defendants*.

---

## CLASS ACTION COMPLAINT

---

Plaintiff brings this class action, individually and on behalf of others similarly situated against Defendants (hereafter "Allianz"), and alleges as follows:

### NATURE OF THE CASE

1.     This case is about one of the world's most profitable and industry-leading insurance companies teaming up with a corrupt, already-nearly-bankrupt travel company to induce travelers to pay upfront for trips and collect premiums for payments on an insurance policy that would never pay claims or insure travelers, because they knew trips would never happen.

2.     Allianz persuaded would-be travelers, through its partner and joint venturer, Vantage Deluxe World Travel, to purchase Allianz trip insurance for $1,400+ per traveler, despite knowing that the coverage was worthless, because Vantage was in dire financial straits and without the resources to reimburse travelers for advance payments or to make the trips happen.

1

3.     Allianz offered and fronted this joint venture policy only under its letterhead, with its logo prominently displayed, under a single policy number, suggesting that the policy being disseminated was promoted and backed by Allianz—an insurance company known as a major player in the field and trusted by consumers.

4.     Allianz and Vantage were working together on the travel insurance joint venture as indicated by the cover letter to the policy, with only Allianz logo and only Allianz signature, and words like "We're", "we", use "our" TravelSmart app (owned by Allianz it turns out), "we" make it easier, giving you access to "our" worldwide "team", signed Allianz Global Assistance.

5.     Additionally, the Allianz-issued letter referred to the travel insurance as a "plan", not separate plans, policies, or insurance. And if not "completely satisfied for any reason", you may "cancel your plan and receive a full refund of the plan price." In Plaintiff's case, the letter reflected that the "total amount paid for your plan was $1,477.00."

6.     But later in the plan, the joint venturers try to suggest that the plan has two distinct parts: Part A (Cancel for Any Reason Waiver) backed by Vantage to provide trip credit if a trip was cancelled pre-departure, and Part B (Post-Departure Vacation Protector) backed by Allianz.

7.     Regardless, the "plan" was administered by Allianz, and Allianz willfully disregarded whether Part A had any value or was simply a worthless contract that Vantage would not honor. That failure of Vantage is the fault and legal obligation of Allianz as a joint venturer and licensed insurer, not on the unsophisticated travel consumers who were not involved in drafting the policies.

8.     From at least 2019 to March 2020, Allianz misleadingly sold policies to consumers who purchased trip packages on cruise ships through Vantage Travel, under its banner, and

purported to be the administrator and insurer of the plan, but now tries to limit its exposure and provides refund to only Part B.

9.      When the COVID-19 pandemic hit the United States in March 2020, and hundreds of Vantage Travel cruises were cancelled for the foreseeable future, causing Vantage irreparable financial harm and later caused it to file for bankruptcy, Allianz continued to promote and sell its $1,447.00 joint venture insurance plan, despite its knowledge that most travel would not be occurring and would-be travelers were paying for a policy that would likely never be implicated.

10.     Allianz also knew that Vantage had not actually invested the consumers' money, such that all the amounts allocated to Part A were simply stolen and pocketed by Vantage and Allianz.

11.     Allianz's conduct is especially despicable because consumers relied on the Allianz brand and reputation for providing reliable travel insurance. It would never occur to these consumers that Allianz was actually selling them $200 of real insurance with the other $1,200+ going into the pocket of a near-bankrupt and corrupt travel company. It is inexplicable that an insurance company like Allianz would not ensure the money paid by consumers did not actually lead to the purchase of insurance.

12.     At best, Allianz rented its name and reputation to receive kickbacks from Vantage on the fake insurance policy peddled to Plaintiff and the other class members.

13.     But for Vantage customers' reliance on this travel insurance plan, they would not have pre-paid for their vacations, spending thousands of dollars out-of-pocket, months (and sometimes years) before the trips were to occur.

14.    However, because Plaintiff and members of the putative class believed they were covered and would be reimbursed by a reputable insurance carrier (Allianz) in case their trips didn't happen, they were willing to fork over the funds to secure their Vantage trip.

15.    Allianz paired with Vantage, despite Vantage's financial woes, as a means to sell the travel plan, and now that Vantage is bankrupt, wants to disavow its joint venture and not cover for the full plan it marketed.

16.    Allianz's hands are just as unclean as those of Vantage, and Allianz cannot wash its hands of Vantage's joint liability.

17.    Allianz is now liable for its promotion, protection, and joint venture with Vantage, making it joint and severally liable not only for the portion of the premium paid by travelers for the Part B, Allianz underwritten portion of the policy, but also for Part A, the Vantage issued pre-trip cancellation waiver and for the exorbitant funds pre-paid by travelers like Plaintiff for trips that never happened.

18.    Plaintiff now seeks the money he (and putative class members) paid for these worthless policies and for damages for the price of cruises that they never would have prepaid for had they known no one would back the travel insurance plan.

## PARTIES

19.    Plaintiff Patrick Healy is an adult resident citizen of Johnson County, Kansas. Pat is the purchaser of Allianz travel insurance for both he and his wife, Shannon.

20.    Defendant Allianz Worldwide Partners ("AWP") corporation, incorporated under the laws of the State of Virginia, and having its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. AWP is a worldwide travel insurance and assistance company.

21.    Defendant Allianz Global Assistance ("Global") is a corporation, incorporated under the laws of the State of Virginia, and having its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. Global is a worldwide travel insurance and assistance company and is a part of AWP.

22.    Defendant Allianz Global Assistance Insurance Agency ("Agency") is a corporation, incorporated under the laws of the State of Virginia, and having its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. Agency is a worldwide travel insurance and assistance company and is a part of AWP.

23.    Defendant Allianz Global Risks US Insurance Company ("Global Risks") is a corporation, incorporated under the laws of the State of Illinois, and having its principal place of business at 225 W Washington Street, Suite 1800, Chicago, IL 60606. Global Risks is a worldwide travel insurance and assistance company and is a part of AWP.

24.    Pursuant to K.S.A. § 40-218, Allianz may be served with process at the Kansas Department of Insurance, 1300 SW Arrowhead, Topeka, KS 66604.

25.    Defendants (collectively "Allianz") are subject to personal jurisdiction in this District, and subject to the Court's specific and general jurisdiction, pursuant to due process, on the grounds that they regularly conduct or solicit business in the state of Kansas, engage in other persistent courses of conduct, and/or derive substantial revenue from the sale of goods and services to persons or entities in the state of Kansas.

26.    At all material and relevant times, Allianz marketed, sold, and distributed its travel insurance for Vantage cruise trips in the United States, including within and to residents of the State of Kansas.

## JURISDICTION AND VENUE

27.    <u>Subject Matter Jurisdiction</u>.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 class members. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and (c), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff is diverse from Defendants.

28.    <u>Personal Jurisdiction</u>.  The Court has personal jurisdiction over Allianz because Defendants regularly conduct business in the State of Kansas, including collecting payment/premium for the insurance policy at issue from Kansas residents, including Plaintiff. In addition, Defendants otherwise made or established contacts in the State of Kansas sufficient to permit the exercise of personal jurisdiction.

29.    <u>Venue</u>.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred in this judicial district, namely Defendants sold the policy at issue to Plaintiff located in this judicial district. Defendants engaged in commerce in this judicial district by selling and distributing the policy at issue to residents across this judicial district, including Plaintiff—and to countless other unsuspecting consumers across the United States, including in the District of Kansas.

## FACTS COMMON TO ALL COUNTS

**I.    Pre-pandemic, high-end cruises were a very desirable trip.**

### *a.    Travelers bought cruise packages and bought travel insurance believing that their trip investment was insured.*

30.    Plaintiff represents a class of consumers who intended to take worldwide, worldclass vacations on cruise ships through Vantage Deluxe World Travel ("Vantage").

31.    Members of the putative class paid tens of thousands of dollars towards travel and what they believed to be valid travel insurance to protect their trip, in the event of the trip being cancelled, for reasons outside their control.

32.    Vantage was a renowned and respected cruise company, known for its luxury cruise vacations throughout Europe, providing cruises to travelers across the U.S. and elsewhere for several years.

33.    Allianz is a recognized brand in the insurance industry, providing insurance across various industries throughout the world, and serving as a leader in travel insurance in the U.S.

34.    Allianz and Vantage partnered together to provide travel insurance and collect premiums to provide insurance for would-be travelers, under the ruse that the trips would occur, and if they did not, travelers would be insured and reimbursed for their expenses.

35.    Plaintiff and the putative class members believed they were purchasing these trips (through Vantage) and the accompanying insurance (through Allianz).

36.    Vantage and Allianz encouraged travelers to purchase trip insurance for peace of mind and told prospective travelers it was important to have in the unlikely event the trip was cancelled.

37.    In December 2022, Plaintiff paid $5,496.00 as an initial downpayment to Vantage.

38.     In January 2023, Plaintiff made another ACH direct payment toward the trip of $22,612.00.

39.     This amount totaled $28,108 for a cruise for him and his wife Shannon, set to sail in October 2023.

40.     Unbeknownst to Plaintiff and the Class, Vantage had virtually no cash flow. So in order to generate immediate cash flow, Vantage gave a substantial discount if the trip was paid in advance, in cash or by ACH debit, so it could not be clawed back or contested on a credit card.

41.     Allianz participated in the discounted early payment for trip insurance by discounting the $1,477 total down to $1,451 each (claiming on the invoice that the Travel Protection Plan was "nonrefundable"). The Travel Protection Plan, trip insurance, and travel insurance mean the same.



## VANTAGE | INVOICE
DELUXE WORLD TRAVEL   90 CANAL STREET, BOSTON, MA 02114

### YOUR RESERVATION

|  | PER PERSON | TOTAL |
|---|---|---|
| Original Price | 20,398.00 | 40,796.00 |
| Advanced Purchase Savings | 10,199.00- | 20,398.00- |
| **JOURNEY PRICE** | **$10,199.00** | **$20,398.00** |
|  |  |  |
| **SELECTED ENHANCEMENTS & FEES** |  |  |
| All-inclusive Airfare - KANSAS CITY INTERNATIONAL AIRPORT | 1,599.00 | 3,198.00 |
| Upgrade - Premium Economy | 1,400.00 | 2,800.00 |
| **SUBTOTAL: Selected Enhancements & Fees** | **$2,999.00** | **$5,998.00** |
|  |  |  |
| **CREDITS/PAYMENTS/ADJUSTMENTS/REWARDS** |  |  |
| Deposit |  | 5,496.00- |
| **SUBTOTAL Credits** |  | **$5,496.00-** |
|  |  |  |
| **TRAVEL PROTECTION PLAN (TPP)** |  |  |
| Travel Protection Plan (nonrefundable)* PATRICK HEALY |  | $1,451.00 |
| Travel Protection Plan (nonrefundable)* SHANNON HEALY |  | $1,451.00 |
|  |  |  |
| **BALANCE DUE** |  | **$23,802.00** |

42.

8

43. The reference to nonrefundable on the Vantage Invoice is contrary to the written word of the Allianz documents, and recently, Allianz has tried to refund the smallest part of the Travel Protection Plan.

44. Allianz represented that the $1,477 ($1,243 for Part A Trip Cancellation Waiver and $205 for insurance and $29 for assistance for the Part B Post-Departure coverage), but never mentioned it was nonrefundable or refundable only in part:



Hi Patrick,

Thank you for protecting your travel with Allianz Global Assistance and Vantage Deluxe World Travel. We're here to give you peace of mind before, during, and after your trip.

To get the most out of your travel protection plan, we recommend downloading our free, award-winning TravelSmart™ app. It allows you to view your policy on your smartphone, file a claim on the go, and get 24-hour emergency assistance with the touch of a button. It's one of the many ways we make it easier for you to get the help you need, when you need it.

This packet contains your Part A Trip Cancellation Waiver details, your Part B Coverage Summary, your Policy/Certificate of Insurance, and a description of the Travel Assistance Services available to you. The total amount paid for your plan was $1,477.00. This includes $1,243.00 for Part A, Waiver. It also includes $205.00 for insurance and $29.00 for assistance on Part B—giving you access to our worldwide team of problem-solving experts that can help with medical and travel-related emergencies.

Please read the attached documents for a complete description of your benefits, and save all your receipts in case you need to file a claim. We want you to have the best travel experience possible.

Have a safe trip,

Allianz Global Assistance

45. Upon purchase of this insurance, Plaintiff believed the policy[1] was insured by Allianz, a trusted and recognized name in the insurance field.

**b. The policy was issued under Allianz letterhead such that Allianz would reimburse the prepaid money if their trip was cancelled.**

---

[1] See Exhibit A for complete Trip Protection Plan sent to Plaintiff.

46.     After paying these exorbitant premiums up-front, months (and sometimes years) before their scheduled travel, Plaintiff and the putative class members received correspondence regarding the insurance and its terms.

47.     This correspondence came from Allianz, via an Allianz email address (documents@allianzassistance.com), under an Allianz banner and stating at the top "Thanks for choosing Allianz Global Assistance".

48.     Any objective, reasonable traveler would see these multiple representations and believe that the policy was underwritten by, and backed by, Allianz.

49.     Now, it appears that Allianz wants to distance itself from its joint venture in travel insurance, and provide refunds only for the small Part B coverage—which is small in cost for a reason, it is not the real value of trip insurance.

50.     Plaintiff and the Class, who paid thousands of dollars before departing, had their trip cancelled through no fault of their own.

51.     Allianz used its brand name, logo, and consumer familiarity to induce travelers to pay for all travel in advance knowing that Allianz was good for refunding the money if Vantage was not.

52.     Any unsuspecting purchaser of the plan would believe that Allianz stood behind both parts of the travel insurance plan, so if the trip was cancelled (other than by Plaintiff or the Class), they would get their money back.

**II.     Pandemic hits, Allianz continues to sell policies, despite all cruises being cancelled**

       ***a.     With the deadly COVID-19 pandemic looming, Vantage cancels all trips, with no date certain when they will resume***

53.     At the beginning of March of 2020, travelers began receiving notices that their pre-paid, pre-planned Vantage trips would be postponed due to the pandemic.

54.     In March, Vantage sent multiple communications to travelers regarding travel in light of COVID and endeavoring to resume in late April 2020.

55.     Unbeknownst to travelers, Vantage was drowning in debt and offered the 110% Future Travel Credit in an effort to retain the money. Some travelers got a refund, but most carried the Future Travel Credit forward [but we will later learn, the 110% credit would be worthless or near worthless in bankruptcy court].

56.     On April 6, 2020, Vantage sent notice to travelers, stating:

UPDATED: Monday, April 6, 2020 2:14 p.m. EST

OUR COMMITMENT TO YOU IS UNWAVERING

The world is facing unprecedented times with COVID-19. We're all enduring a lot as we make crucial adjustments to our everyday lives, including social distancing from loved ones and halting unnecessary travel. **To that end, we have made the decision to extend our temporary suspension of all journeys through May 24, 2020.**

We are deeply appreciative of your understanding as we navigate an ever-changing situation — and acknowledge your disappointment if your journey with us has been affected.

Since our original announcement on March 11, we have worked tirelessly with our travelers to move their departure dates. If your departure date falls within our new window of suspended journeys, we will soon be reaching out to you to reschedule your departure with a **Future Travel Credit valued at 110% of the monies paid to Vantage, which can be applied to any 2020 or 2021 departure.** By adding increased value, you'll have new opportunities to upgrade your airfare or cabin class, add an optional pre- or post-trip extension, purchase optional tours, and more. You'll have 12 months from your original departure date to utilize your Future Travel Credit.

**Please note:** We appreciate your patience while we contact impacted travelers. If your journey was scheduled to depart on or before May 24, 2020, please call 1-888-514-7617 to reschedule your journey or to review your options. If you would like to speak to a representative about a journey scheduled to depart after May 24, 2020, please contact us via the chat function on our homepage, email customercare@vantagetravel.com, or call 1-888-982-6824. As a reminder, you can view your journey information and make payments via My Portfolio.

Although we're unable to travel at the moment, let us remember that it's for a good reason. The health, safety, and security of our guests, employees, and overseas partners remain our first priority — now and always. We thank you for your continued support.

57.     Vantage assured travelers it would restart business as usual as soon as it was able and encouraged them to plan their new journey (with a 10% bonus towards what they had previously paid) and to make payments towards these trips.

> **b.   *Tired of sitting at home, and hoping the travel industry will resume at some point, travelers continue to buy cruise packages for trips to be taken after the pandemic relents***

11

58.    Because of Vantage's multiple, frequent, and reassuring updates,[2] travelers and their companions continued to buy cruise and trip packages, pre-paying for both the vacation and the insurance plans.

59.    Travelers paid between $1,000-$2,000 a person for the peace of mind benefit of the insurance—and Vantage encouraged them to buy it, telling them it would be good to have if the trip were to fall through or circumstances change.

60.    However, because of Vantage's precarious financial posture, and the misdeeds of its owner, Henry R. Lewis, Vantage was never in a position to fully resume business and fulfill the trips that its customers were paying for.

61.    In late 2022, believing pandemic-related travel barriers to finally be removed, and with the confidence of the Travel Protection Plan, Plaintiff had no qualms paying for his vacation upfront, several months before it was set to occur.

62.    Had Plaintiff known the insurance he was purchasing was not worth the paper it was written on and that Allianz was not going to stand behind pre-departure claims, he would not have paid over $28,000 more than ten (10) months in advance of his trip.

63.    But Plaintiff and the putative class did not know that Vantage was experiencing financial woes, and continued to purchase trips and insurance coverage, looking forward to a time when the pandemic subsided and travel returned to normal.

> c.  *Allianz knows Vantage is broke, but continues to collect nonrefundable premiums, knowing it will pay minimal claims (if any), because it doesn't provide pre-trip insurance and most trips won't happen, so the in-trip coverage will never be triggered.*

---

[2] See Exhibit B, Vantage Travel Heath Advisory Updates to travelers.

64.     Allianz is a multibillion-dollar company, which vets and investigates all the entities



it insures, to guarantee it won't lose money by providing coverage.

65.     Allianz, as a joint venturer with Vantage on Travel Protection Plans, would have been in the best position to know the financial stress of Vantage, and protect against a Vantage bankruptcy. Any due diligence would have uncovered the situation with Vantage during the course of Allianz's regular (likely bi-annual or annual) reconnaissance before agreeing to insure trips with Vantage.

66.     Allianz is publicly traded, with a duty to its over 900,000 shareholders to make good, financially-sound decisions. As such, it is required to thoroughly examine the companies it insures to assess the risk of the policies it underwrites being implicated.

67.     During this time, with most trips halted for the foreseeable future, as people grew antsy during countless stay-at-home orders and shutdowns, they continued to purchase trips, believing the return to normalcy would mean their ability to take their Vantage cruise.

68.     When travelers purchased and paid in advance for trips to occur post-pandemic, they were encouraged to purchase the insurance, and believe it provided a safeguard in case the pandemic waned on and the trip never happened, because they believed they were purchasing a travel protection plan from a reputable (financially sound and solvent) insurance company.

69.     What purchasers of the plan failed to comprehend was that Allianz was not going to stand behind the largest, and most important part of the travel protection plan, the pre-trip insurance if the trip was cancelled or never occurred.

### III.    Vantage is broke, Allianz is enriched

> *a.    Right up to the point that Vantage filed for bankruptcy, Allianz continued to sell its policies, despite that it knew or should have known that its joint venturer, Vantage was nearing insolvency.*

70.     Right up until the day Vantage filed its first day pleadings in District of Massachusetts Bankruptcy Court, Allianz continued to sell travel insurance policies in conjunction with Vantage.

71.     As early as 2022, more than a year and a half before the bankruptcy filing, Vantage owner Henry R. Lewis' financial woes were playing out publicly, after he sued his long-time financial advisor and confidant, James Goode, alleging he had relied on Goode's advice and lost investments to the tune of close to $13 million.[3]

72.     Simultaneously, Vantage was continuing to promise travelers that trips would occur down the line and encouraging them to pay for their trips in full, ahead of time, making the need for insurance even more crucial.

---

[3] *See Commonwealth Real Estate Holdings, LLC, Lewis Capital Fund, LLC and Henry R. Lewis v. Andersen Tax LLC and James E. Good*, Case 22-cv-11974-IT

73.     Vantage also provided discounts for travelers who paid via ACH debit or check, instead of credit card, because they needed cash fast, wanted to avoid card processing fees and cut off customers' ability to dispute the charges for refund with their card company.

74.     Allianz was aware of both Vantage and Lewis's financial troubles, but continued to venture with Vantage to sell its insurance.

75.     Correspondence to Plaintiff and members of the putative class stated:



Hi Patrick,

Thank you for protecting your travel with Allianz Global Assistance and Vantage Deluxe World Travel. We're here to give you peace of mind before, during, and after your trip.

76.     Allianz continued to venture with Vantage and collect premiums, despite the fact that trips that were being insured were never going to occur.

77.     The number of trips that actually occurred post March 2020 is unknown to Plaintiff and the putative class, but believe it was a fraction of those scheduled, based on the number of Proof of Claims submitted to the bankruptcy court (nearly 4,000)[4] and customer complaints readily available online.

### b.   Allianz publicly severs ties with Vantage, claiming they are not affiliated.

78.     In the weeks leading up to the bankruptcy, as tensions mounted, and customers, vendors and Vantage employees alike pleaded for answers from the insolvent company, Allianz realized it was on the hook for the joint venture with Vantage and sought to break free from its venture with Vantage.

---

[4] https://cases.stretto.com/Vantage/claims/ (last visited October 17, 2023)

79.     Recognizing that bankruptcy and the company folding up shop was imminent, at the eleventh hour, Allianz publicly proclaimed it was not affiliated with Vantage.

80.     However, during the class period, Allianz ventured with Vantage, as evidenced by their jointly-issued insurance policies, jointly-collected premiums, and Allianz disseminating the intertwined policies from its email address, under its banner, and with cover on its letterhead.

81.     In correspondence to consumer advocate blogger Michelle Couch-Friedman, in late May 2023, Allianz proclaimed "We have terminated our relationship with Vantage, and they are no longer authorized to offer our insurance products, either separately or together with Vantage's cancellation fee waiver (Part A)."[5]

82.     Allianz went on to state that it was in the process of informing customers of its disaffiliation with Vantage and they were entitled to a refund of their premium, but Plaintiff (and the putative class members) did not receive that notice and did not receive any reimbursement of money paid to Allianz until nearly half a year later.

83.     On June 29, 2023, Vantage formally filed for Chapter 11 bankruptcy, alleging its liabilities outweighed its assets.

   c.   *With bankruptcy proceedings in full swing, Vantage is off the hook, having gone nearly 4 years with only paying few claims under their policies.*

84.     With Vantage's debts continually mounting, and Plaintiff and putative class members knocking for their travel funds, Vantage filed for Chapter 11 bankruptcy, to absolve itself of close to $200 million of outstanding liabilities.[6]

---

[5] Couch-Friedman, Michelle. *Help! Vantage Travel canceled my cruise. What should I do now?* CONSUMER RESCUE (June 2, 2023) https://consumerrescue.org/travel-troubles/vantage-travel-canceled-cruise-customer-guidance/ (last visited October 3, 2023)

[6] *See In re: Vantage Travel Service, Inc*., Case 23-11060.

16

85.     Despite Vantage owing Plaintiff and the putative class over $108 million in unused, pre-paid trip funds, Allianz claims it has no obligation to these travelers for either the prepaid travel or the premiums for the travel insurance.

86.     The exact number of travelers who purchased the travel insurance at issue and actually took trips is unknown to Plaintiff, but will be revealed through discovery. Most got fleeced by the joint venture of which Allianz was a part.

87.     Even customers who were told their trips were proceeding, and had confirmed flights, tickets, and itineraries were told last minute that their trips had been cancelled, sometimes just minutes before they were set to board their departing flight.[7]

88.     Others who pre-paid for trips and trip insurance died waiting for their postponed trip to occur.[8]

89.     Because thousands of people who paid Allianz for trip insurance never actual traveled or had the ability to use their insurance, Allianz was unjustly enriched by (a) the joint venture premium, and (b) not refunding the money when the full credit voucher via Vantage was no longer possible.

90.     Allianz continued to sell the policies, with the knowledge that Vantage was not re-booking the vast majority of the trips, collecting money from travelers for policies that could never and would never be implicated on trips that would never come to fruition.

---

[7] Hannah Morse, *Would-be travelers out thousands of dollars after last-minute cancellations. What to do.* THE    PALM    BEACH    POST.    (May    16,    2023.) https://www.palmbeachpost.com/story/news/2023/05/16/vantage-travel-cruisers-await-money-back-after-cancellations-what-to-do/70194449007/ (last visited September 26, 2023)

[8] Melissa Ellin, *Complaints mount against Mass.-based travel company.* (June 1, 2023) https://www.boston.com/news/business/2023/06/01/complaints-mount-against-mass-based-travel-company/?amp=1 (last visited October 2, 2023)

        **d.   Allianz should now pay back the nonrefundable premiums in full, as well as travelers' cost of trips that they would not have purchased had they known they were not covered by a real government regulated insurer of impeccable reputation.**

91.    Plaintiff and the putative class were damaged because of Allianz's misleading practice.

92.    Allianz deceived customers by leading them to believe Allianz backed the policy entirely and by collecting premiums on each policy, and when Vantage took bankruptcy, reneging on the deal.

93.    Now, after Vantage has filed for bankruptcy, the company is defunct, Allianz has begun to issue meager refunds for a fraction of the cost of what Plaintiff and putative class members paid for premiums, and trying to distance itself from refunding the money taken in by the joint venturer which could not have happened without Allianz's presence.

94.    More than three months after Vantage filed bankruptcy, on October 1, 2023, Plaintiff and his wife received the following correspondence from Allianz:

Hi Patrick,

We have received notification that your plans have changed. We have updated our records, and you will receive a refund accordingly.

**About your canceled plan**

**Plan:**
Travel Protection Plan

**Purchase Date:**
December 19, 2022

**Plan Number:**
TR03855090

**Effective Date:**
December 19, 2022

**Cancellation Date:**
January 13, 2023

We're sorry it didn't work out this time, but we hope you'll consider us again when protecting your future plans.

If you have questions about your refund or require additional assistance, please contact us at 1-866-654-9317.

Sincerely,
Allianz Global Assistance

95.     Accompanying this correspondence was a check in the amount of $234.00, which represents the amount paid for the Part B premium, but just approximately 1/7 of the total amount Plaintiff paid to insure his trip and less than 1% of the total Plaintiff paid for the trip.

96.     However, this pittance is too little, too late, as Allianz has retained and made money off of Plaintiff's premiums over the course of the last several months and should be disgorged of all profits and interest they made and retained under false pretenses.

97.     Allianz teamed up with Vantage in what it saw as a lucrative opportunity to prey on unsuspecting people, despite its knowledge that Vantage was closing in on insolvency and that these trips would never occur, as a risk-free way to get cash quick, and it must now be held accountable.

## IV.   Allianz voluntarily entered into, and benefited from, its partnership with Vantage and now must pay for the sins of itself and its co-venturer

98.     During the class period, as indicated in the facts above, Allianz and Vantage engaged in a joint venture enterprise for profit.

99.     Allianz and Vantage entered into an agreement for Allianz to provide and administer trip insurance to Vantage customers.

100.    This joint venture is indicated by several key factors:

      (a)     Vantage travelers purchased Allianz insurance through Vantage's website or customer service representatives;

      (b)     Vantage employees encouraged Vantage travelers to purchase the Allianz insurance;

      (c)     When paying for the policy, Plaintiff and putative class members made a single premium payment to cover the entire Travel Protection Plan--Part A

(Cancel for Any Reason Waiver) and Part B coverage (Post-Departure Vacation Protector)

(d)     After Vantage received the premium payment, it provided customer's name and contact information to Allianz to administer the coverage;

(e)     The plan was issued by Allianz, under their cover and through their email server;

(f)     Allianz issued the coverage under a single plan called "Travel Protection Plan" with a single plan number;

(g)     Allianz' insistence that it needed to unwind and disassociate from Vantage at the time the bankruptcy was filed and the Vantage brand was disgraced after illegally retaining millions of dollars of customers' money.

101.    The mutual acts and conduct of Allianz and Vantage expose the association-in-fact and joint venture and an agreement amongst the two to act as an enterprise for profit.

102.    Even while Vantage was nearing total insolvency and more trips were being indefinitely postponed or cancelled than were being taken, both Vantage and Allianz saw an opportunity to continue to make money from unsuspecting customers, like Plaintiff and the putative class members.

103.    As a result of the association-in-fact and joint venture between Allianz and Vantage, Plaintiff sustained damage in the form of his total premium payment for he and his wife, $2,954 ($1,477 x 2), as well as prejudgment interest, and is entitled to punitive damages and attorneys' fees.

104.    As a result of the association-in-fact and joint venture between Allianz and Vantage, Plaintiff sustained damage in the form of what the plan was to cover of his total payment

for his trip of $25,154, as well as prejudgment interest, and is entitled to punitive damages and attorneys' fees.

105.    Allianz is jointly and severally liable for all damages arising from its joint venture with Vantage.

## CLASS ACTION ALLEGATIONS

106.    Plaintiff seeks certification on behalf of a Rule 23(b)(3) class defined as follows (the "Nationwide Class"):

> All persons who purchased Travel Protection Plan insurance from Allianz, booked a Vantage cruise that did not sail, and did not get fully reimbursed by Vantage and/or Allianz for everything they paid for the cruise that did not sail.

107.    Excluded from the Class are: (1) the judge(s) to whom this case is assigned and any immediate family members thereof, (2) employees of Allianz and any affiliated business entities, (3) employees of Vantage and any affiliated business entities.

108.    For the purposes of the Class Definition, Vantage refers to Vantage Travel Services, Inc., Vantage Deluxe World Travel, Vantage Cruises, or any other name affiliated with the now-bankrupt Vantage entities.

109.    For the purposes of the Class Definition, Allianz refers to all Allianz affiliated entities.

110.    <u>Numerosity and Ascertainability</u>. The members of the proposed Class are so numerous that individual joinder of all members is impracticable. Plaintiff is informed and represents the number of people who would be members is in excess of 1,000 throughout the U.S. The precise number of class members and their addresses are unknown to Plaintiff; however, this

information is readily available from Defendant's records. Further, the class definition is crafted using exclusively objective questions to determine membership, making the class ascertainable.

111.    <u>Commonality and Predominance</u>. This action involves numerous common questions of law and/or fact that predominate over any questions which may affect only individual class members. Additionally, the evidence used to answer these common questions would likewise be common. These common questions include, but are not limited to:

a.    Whether Defendants engaged in the conduct alleged herein;

b.    Whether Defendants formed a joint venture with Vantage;

c.    Whether Defendants owed a duty to monitor the actions of Vantage;

d.    Whether a reasonable consumer would have believed that Allianz was the issuer of all insurance regarding Vantage;

e.    Whether Defendants are liable for damages owed by its joint-venturer Vantage;

f.    Whether Defendants materially misrepresented the terms of its travel insurance issued to Vantage travelers;

g.    Whether Defendants were unjustly enriched in collecting premiums for insurance;

h.    Whether Defendants breached contractual obligations with Plaintiff and putative class members;

i.    Whether Defendants engaged in a civil conspiracy with Vantage;

j.    Whether Plaintiff and the Class Members are entitled to the recovery of actual and/or statutory damages and attorneys' fees; and

k.    Whether Plaintiff and the Class Members are entitled to the recovery of punitive damages.

112.    <u>Typicality</u>. The named Plaintiff's claims are typical of the claims of the absent members of the proposed Class because, among other things, Plaintiff paid for trip insurance, Plaintiff's cruise never set sail, and Plaintiff was never fully reimbursed.

113.    <u>Adequacy of Representation</u>. Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the Class he seeks to represent. Additionally, Plaintiff retained counsel competent and experienced in complex consumer class action litigation. Plaintiff intends to prosecute this action vigorously, ensuring that the interests of the Class(es) will be fairly and adequately protected.

114.    This case can properly be maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3) because the common questions of law and/or fact predominate over the individual questions and because a class action is superior to all other available means for the fair and efficient adjudication of the claims.

115.    <u>Superiority</u>.  A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class member's claims. Because of the relatively modest size of each individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein on an individual basis. Absent a Class Action, the members of the proposed Classes would not be likely to recover, or would not likely have the chance to recover, damages and/or restitution, such that Allianz would be permitted to retain the proceeds of its unlawful conduct.

## COUNT I
## NEGLIGENT MISREPRESENTATION

116.    Plaintiff, on behalf of himself and the Class, and all others similarly situated, re-allege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

117.    Allianz, as the drafter of the insurance and policies at issue, was in a position to unilaterally convey the precise terms and coverages of the policy

118.    Allianz failed to exercise reasonable care or competence in communicating what portion, in particular, of the policy, it had underwritten and was providing coverage for.

119.    By sending the policy from an Allianz.com email address, under the Allianz banner, with a cover letter issued and signed by Allianz, Plaintiff and members of the putative class reasonably relied on this information, believing Allianz to be the insurer of the travel policy purchased.

120.    Plaintiff, like other purchasers of the policy, is within the group of people for whose benefit the policy was written. Allianz teamed with Vantage to create this insurance solely for Vantage travelers, the putative class members.

121.    Because of Allianz's negligent misrepresentations regarding this policy, Plaintiff and putative class members sustained damage, pre-paying for trips that would not be reimbursed, and purchasing insurance that had little to no value, and that they would not have purchased had they known the true terms and Allianz had clearly and unequivocally expressed that it did not underwrite or provide coverage for trip cancellation or any claims pre-departure.

24

122.    As a direct or proximate result of Defendant's conduct, Plaintiff and the putative class members suffered actual damages in the purchase of these trips and policies that were worth significantly less than the price paid and because they would not have purchased the policy had they known they would not be reimbursed for trips cancelled by Vantage, entitling them to compensatory and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial.

123.    Further, Plaintiff and the putative class members shall be entitled to an award of punitive damages, as is clear from the facts herein that Defendant's actions were performed with complete indifference to the probable consequences of their actions. By Defendant's putting their own pecuniary interests ahead of all else, they unfairly profited off the unsuspecting travelers, who believed the purchase of insurance would do just that—insure them and their deposits and down payments, in the instance the trip was cancelled for any reason. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

COUNT II

UNJUST ENRICHMENT

124.    Plaintiff, on behalf of himself and the Class, and all others similarly situated, re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

125.    Allianz is a major player in the extremely lucrative insurance industry—ranking as the 4th largest insurance company in the world and holding 17% of the market share of travel insurance in the US.[9]

---

[9]    https://www.statista.com/topics/1628/allianz-group/#topicOverview (last visited October 9, 2023)

126.    Allianz received a benefit to the tune of millions of dollars in purchases of this deceptive insurance policy from Vantage would-be travelers.

127.    Allianz retained these millions of dollars in revenue.

128.    Under the circumstances and the fact that Allianz did sell these policies to Plaintiff and the putative class members, which contained no real promise to pay or compensate Plaintiff for trips that would never happen, it is unjust and unequitable for Defendant to retain the money paid for these policies.

129.    As a direct or proximate result of Defendant's conduct, Plaintiff and the putative class members suffered actual damages in the purchase of these policies that were worth significantly less than the price paid and because they would not have purchased the policy had they known they would not be reimbursed for trips cancelled by Vantage, entitling them to compensatory and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial.

130.    Further, Plaintiff and the putative class members shall be entitled to an award of punitive damages, as is clear from the facts herein that Defendant's actions were performed with complete indifference to the probable consequences of their actions. By Defendant putting its own pecuniary interests ahead of all else, they unfairly profited off the unsuspecting travelers, who believed the purchase of insurance would do just that—insure them and their deposits and down payments, in the instance the trip was cancelled for any reason. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

**COUNT III**
**UNJUST ENRICHMENT THROUGH JOINT VENTURE WITH VANTAGE**

131.    Plaintiff, on behalf of himself and the Class, and all others similarly situated, re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

132.    Defendants promoted their travel insurance to travelers booking trips, and in fact, encouraged travelers to purchase it, telling them it would be a good failsafe.

133.    Defendants received a benefit (millions of dollars in travel insurance purchases) from this deceptive insurance policy from would-be travelers.

134.    Under the circumstances and the fact that Allianz did sell these policies to Plaintiff and the putative class members, which contained no real promise to pay or compensate Plaintiff for trips that would never happen, it is unjust and unequitable for Defendant to retain the money paid for these trips and policies.

135.    Allianz, as a party to a joint venture with Vantage, is jointly and severally liable for all damages owed by Vantage to Plaintiff and the putative class.

136.    As a direct or proximate result of Vantage's conduct, Plaintiff and the putative class members suffered actual damages in the purchase of these trips and policies that were worth significantly less than the price paid and because they would not have purchased the policy had they known they would not be reimbursed for trips cancelled by Vantage, entitling them to compensatory and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial.

137.    Further, Plaintiff and the putative class members shall be entitled to an award of punitive damages, as is clear from the facts herein that Vantage's actions were performed with complete indifference to the probable consequences of their actions. By Vantage putting its own

pecuniary interests ahead of all else, they unfairly profited off the unsuspecting travelers, who believed the purchase of insurance would do just that—insure them and their deposits and down payments, in the instance the trip was cancelled for any reason. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

### COUNT IV
### BREACH OF CONTRACT BY VANTAGE THAT ALLIANZ IS RESPONSIBLE FOR AS A JOINT VENTURER

138.    Plaintiff, on behalf of himself and the Class, and all others similarly situated, re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

139.    Vantage and Plaintiff the putative class members executed and were parties to a binding agreement in the form of the pre-trip cancellation fee waiver.

140.    This binding contract is evidenced by Plaintiff paying consideration, to the tune of $1,243.00 to Vantage for the Part A waiver, and, more importantly, $25,154 in pre-paid trip funds.

**Trip Cancellation Waiver**
**The Cancel for Any Reason Waiver is provided by Vantage Deluxe World Travel.**

| CANCEL FOR ANY REASON WAIVER LIMIT |
| --- |

The maximum amount covered under this Cancel for Any Reason Waiver is Your Trip Cost.

| CANCEL FOR ANY REASON WAIVER DETAILS |
| --- |

When purchased, this Cancel for Any Reason Waiver ("this Waiver") is incorporated into and constitutes a part of Your passenger contract with Us and becomes effective when We receive Your payment for this Vantage Deluxe World Travel Travel Protection Plan ("this Plan"), provided that you purchase this Plan within the limited time period in which it is offered to You by Us.

What we will do under this Waiver:

- If you cancel Your Trip for any reason before the scheduled Trip departure, We will waive Our corresponding cancellation penalties and reimburse You in cash or in travel vouchers (depending on Your reason for cancellation) for the nonrefundable portion of the Trip Cost.
- We will also waive any additional fees up to $1,000 that You would otherwise incur for changes to Your per person occupancy rate if a person booked with You on Your Trip cancels his/her reservation with Us before the scheduled Trip departure and You do not cancel Your Trip.

Please Note: This Waiver does not cover fees or costs associated with any transportation, accommodations, or other travel services that are not arranged by Us. Any amount payable under this Waiver will be reduced by the amount of any Trip Cancellation amounts paid or payable under any other travel insurance or travel protection plan providing Trip Cancellation benefits.

How You are reimbursed under this Waiver:

- If You cancel Your Trip before the scheduled Trip departure for any of the Specified Reasons listed below which first occur after Your purchase of this Plan and before Your scheduled Trip departure, We will reimburse You in cash.
- If you cancel Your Trip before the scheduled Trip departure for any other reason, We will reimburse You with a travel voucher that can be used for future transportation, accommodations, and other travel services arranged by Us. The limitations on that travel voucher are explained below.

141.    Plaintiff and putative class members intended to and indicated their willingness to pay for, and indeed take the vacations they paid for, and to only exercise their rights under the contract if needed and their trip was cancelled pre-departure.

142.    Vantage unilaterally drafted the language and terms of the agreement, identifying it as a part of the traveler's passenger contract, becoming effective when Vantage collected payment from putative class members.

143.    The Cancel for Any Reason Waiver policy specified "When purchased, this Cancel for Any Reason Waiver ("this Waiver") is incorporated into and constitutes a part of Your passenger contract with Us and becomes effective when We receive Your payment for this

Vantage Deluxe World Travel Travel Protection Plan, provided that your purchase this Plan within the limited time period in which it is offered to You by Us."[10]

144.    When these trips were cancelled,  Vantage failed to uphold its end of the bargain and breached the contract, by failing to reimburse Plaintiff and putative class members for the value of the trip.

145.    Allianz, as a party to a joint venture with Vantage, is jointly and severally liable for all damages owed by Vantage to Plaintiff and the putative class.

146.    As a direct or proximate result of Vantage's conduct, Plaintiff and the putative class members suffered actual damages in the purchase of these trips and policies that were worth significantly less than the price paid and because they would not have purchased the policy had they known they would not be reimbursed for trips cancelled by Vantage, entitling them to compensatory and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial.

147.    Further, Plaintiff and the putative class members shall be entitled to an award of punitive damages, as is clear from the facts herein that Vantage's actions were performed with complete indifference to the probable consequences of their actions. By Vantage putting its own pecuniary interests ahead of all else, they unfairly profited off the unsuspecting travelers, who believed the purchase of insurance would do just that—insure them and their deposits and down payments, in the instance the trip was cancelled for any reason. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

---

[10] See Exhibit A, Vantage Cancel for Any Reason Waiver.

## COUNT V
## CIVIL CONSPIRACY

148.    Plaintiff, on behalf of himself and the Class, and all others similarly situated, re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

149.    Allianz and Vantage teamed up and worked in concert to generate exorbitant amounts of revenue for themselves by selling the trip insurance at issue.

150.    They worked in concert to achieve sales of these policies to Vantage travelers.

151.    The association between Allianz and Vantage is evidenced in correspondence provided by Allianz, naming Vantage as the provider of the pre-departure trip insurance and itself as the provider of the post-departure coverage.

152.    Further, the policy at issue was advertised by Vantage and purchased through Vantage, when travelers were purchasing their trips, despite being administered by Allianz.

153.    As indicated by the facts and as will be revealed in detail in discovery, Defendant Allianz and Vantage had a meeting of the minds to sell these policies, that had little to no value to the travelers who purchased them, and in the course of doing so, committed various underlying unlawful acts alleged herein, including negligent misrepresentation, unjust enrichment, and breach of contract.

154.    As a direct or proximate result of Defendant's conduct, Plaintiff and the putative class members suffered actual damages in the purchase of these trips and policies that were worth significantly less than the price paid and because they would not have purchased the policy had they known they would not be reimbursed for trips cancelled by Vantage, entitling them to compensatory and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial.

155.    Further, Plaintiff and the putative class members shall be entitled to an award of punitive damages, as is clear from the facts herein that Defendant's actions were performed with complete indifference to the probable consequences of their actions. By Defendant's putting their own pecuniary interests ahead of all else, they unfairly profited off the unsuspecting travelers, who believed the purchase of insurance would do just that—insure them and their deposits and down payments, in the instance the trip was cancelled for any reason. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

### PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all Class Members whom he seeks to represent, pray for the following relief:

a.   An Order certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing Plaintiff's counsel as Lead Counsel for the Class;

b.   Judgment entered in favor of Plaintiff and all Class Members and against Defendant in an amount that is fair and reasonable as determined by the jury at trial, including, but not limited to, all actual damages, statutory damages for each and every violation, and punitive damages;

c.   Pre- and post-judgment interest at the maximum rate permitted by applicable law;

d.  All costs incurred in connection with this action, including reasonable

attorneys' fees; and

e.  Such other relief, at law or in equity, as this Court deems just and proper.


Respectfully submitted by,

*s/ Rex A. Sharp*
Rex A. Sharp KS #51205
SHARP LAW LLP
4820 W. 75th Street
Prairie Village, KS  66208
(913) 901-0505
(913) 901-0419 Fax
rsharp@midwest-law.com

*Counsel for Plaintiff and Putative Class*